ALISON NOLAN ET AL. *v.* NATIONWIDE MUTUAL
INSURANCE COMPANY
(AC 19213)

Foti, Mihalakos and Pellegrino, Js.

Argued June 5—officially released September 19, 2000

*Deborah L. Bradley,* for the appellant (defendant).

*Max F. Brunswick,* with whom were *Christian L. DiPentima* and, on the brief, *Herbert Watstein,* for the appellees (plaintiffs).

*Opinion*

PELLEGRINO, J. The defendant, Nationwide Mutual Insurance Company, appeals from the judgment rendered following a jury trial in favor of the plaintiffs, Alison Nolan and Gary Nolan,[1] in this action to recover underinsured motorist benefits for personal injuries arising from an automobile accident. The defendant claims that the trial court improperly commented on the evidence to the jury. We agree with the defendant and reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On June 13, 1992, Alison was in an automobile accident in which she claimed that she injured her left knee on the dashboard of the vehicle in which she was driving. Shortly after the accident, Alison was transported to a hospital emergency room for treatment. The emergency room report contained no notes of Alison striking her knee, nor were any X rays taken of her knee. She did, however, have a small laceration of her knee that was treated.

During the two year and five month period following the accident, Alison did not seek treatment for her claimed knee injury. Thereafter, in 1994 and 1995, she was treated for a left knee condition and had three arthroscopic surgeries. In 1995, the plaintiffs brought this action against the defendant, their insurer, seeking

---

[1] The plaintiff Alison Nolan, a minor, brought this action by and through her mother and next friend, Wendy Nolan. The plaintiff Gary Nolan, Alison's father, also alleged a claim for damages.

damages under the underinsured and uninsured motorist provisions of their insurance contract with the defendant.

Alison's orthopedic physician testified that the knee injury was causally connected to the 1992 accident. The defendant's expert physician performed an examination of Alison before and after the surgeries. The expert testified that the knee injury was not caused by the 1992 accident.

At trial, the defendant did not contest either the liability of the tortfeasor, Steve Dionne, or the question of coverage. The contested issues concerned only the question of proximate cause of the claimed injuries, particularly, whether Alison's knee injury and subsequent surgeries were causally related to the accident.

After the jury began its deliberations following the conclusion of the court's initial instructions, it submitted a question to the court regarding whether it was the jury's responsibility to determine that the motor vehicle accident was the primary cause of the present injury or a contributory factor to Alison's injury.[2] The court responded to that question by rereading its charge on proximate cause. The court then asked the jury whether its question was answered. At least one member of the jury responded that it had not been answered, at which point the court stated: "I am departing from the [jury] charge here. . . . The question is were the three surgeries proximately caused by the accident and the answer, if you find, and I am not telling you to find this because that is up to you . . . . I am not telling you that these surgeries came about as a result of the accident, but . . . if you find that the surgeries came

---

[2] The question submitted by the jury was as follows: "[I]s it our responsibility to determine that the [motor vehicle accident] is the primary cause of injury today or is it a contributory factor to her injury?"

about as a result of the injuries sustained in the accident . . . .

"Now you have to make that finding. I am giving you my opinion which you do not—I am allowed to comment on the evidence, so I am going a little further than I did on the charge. You do not have to take my opinion, you can disregard it if you wish to, but it seems to me that the accident was the proximate cause of the initial injuries, and also the three surgeries were proximately caused by the motor vehicle accident. . . . It is clear to me anyway that if you didn't have the motor vehicle accident, there would be no injuries . . . . [W]hat other cause was there of the injury other than the motor vehicle accident?"

A juror then stated: "Pre-existing condition perhaps." The court responded by stating: "What we have is— the only evidence that I've heard is that she injured herself. The thing that comes to mind is the knee because of the softball. She claims she was fully recovered from that and there is no indication anywhere that she suffered a permanent disability, so you have to, therefore, assume that there was no permanent disability, condition existing as to her knee prior to this accident. Therefore, the entire 15 percent disability would be as a result of this accident."

The court further stated: "The surgeries are another issue, at least in my opinion, because they stem from this accident . . . . There is no indication of a prior permanency, at least there has been no testimony to it, so you have to assume that there wasn't any percentage of disability which would mean the whole 15 percent would be as a result of this accident."

The jury was then excused, and the defendant objected to the court's comments, stating: "You essentially told the jury that there was a causal relationship between this accident and the need for the surgeries.

. . . The issue which I argued to the jury was the causal relationship between this accident and any condition in 1994 that then required her to have surgery. You just took the issue from the jury. You told them that there was a causal relationship in your opinion between the accident and the need for the surgeries. You've essentially directed a verdict on that issue. . . . You said that in your opinion, the motor vehicle accident was the proximate cause of the injuries and the surgeries. . . . I take an exception to that portion of the charge that you just gave."

The judge, thereafter, called the jury back into the courtroom and issued a curative instruction. The court stated in relevant part: "I've indicated my opinion . . . . You're fully entitled to disagree with that opinion. I am not instructing you that you must decide this case in accordance with my opinion. I've given you my opinion, but—and there is a right and duty under the case law of the court to comment upon the evidence, which is what I thought I was doing . . . ."

The jury awarded the plaintiffs damages in the amount of $175,000, which included $32,142.39 in economic damages and $142,857.61 in noneconomic damages.

The sole issue on appeal is whether the court's comments to the jury in response to a question it had submitted were improper, thus depriving the defendant of a fair trial. We agree with the defendant that the court's comments improperly influenced the jury.

The defendant argued to the trial court, and also on appeal, that the opinion the trial judge expressed to the jury, that is, that the accident was the proximate cause if the injuries and the surgeries, essentially decided the issue for the jury. The defendant asserts that the plaintiffs failed to prove by a fair preponderance of the evidence that the surgeries were causally connected to

the accident because there was a gap in treatment for two and one-half years, and that the jury, therefore, must have accepted the court's opinion of causation. The plaintiffs argue that the court made it clear that its opinion was not binding on the jurors and that the court's curative instruction was sufficient to overcome any undue influence that the court's opinion may have had on the jurors. We agree with the defendant that it was improper for the court to express an opinion as to a critical element of the plaintiffs' claim and that, in so doing, it deprived the defendant of a fair trial.

The jury's role is well defined. "It is the province of the jury to resolve the facts and determine the credibility of the testimony." *State* v. *Dumlao*, 3 Conn. App. 607, 615, 491 A.2d 404 (1985). "It is the jury's right and duty to consider the evidence presented at trial and to draw reasonable inferences from that evidence. . . . The jury may accept or reject the testimony of any witness . . . and determines the weight to be given the evidence." (Citations omitted.) *State* v. *Cooley*, 24 Conn. App. 489, 490–91, 589 A.2d 377, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). Proximate cause is a question of fact that is also within the province of the jury. "Conclusions of proximate cause are to be drawn by the jury and not by the court." (Internal quotation marks omitted.) *Trzcinski* v. *Richey*, 190 Conn. 285, 295, 460 A.2d 1269 (1983). Although the jury is the factfinder and it is within the jury's exclusive domain to decide issues on the basis of the facts that it finds, such as the issue of proximate cause, it is permissible for the court to make reference to the evidence. *State* v. *James*, 211 Conn. 555, 571, 560 A.2d 426 (1989) (trial court has broad discretion to comment on evidence). It is certainly proper and in some instances the duty of the judge in a jury trial to comment on the evidence. *State* v. *Delgado*, 247 Conn. 616, 628, 725 A.2d 306 (1999) (" '[a] trial court often has not only the right, but also

the duty to comment on the evidence' "). "The purpose of marshaling the evidence by the trial judge is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality. . . . To avoid the danger of improper influence on the jury, a recitation of the evidence should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention." (Citation omitted; internal quotation marks omitted.) Id., 628–29. The trial court's comments, however, must be neutral and unbiased so as not to influence the jury in any way from fulfilling its exclusive factfinding function.

The judge has an obligation to be neutral and unbiased because of the obvious position of influence that the judge has in a given case. "The trial judge occupies a unique position in the trial of a case. He is not a neutral observer of a forensic contest. His primary obligation is to see that justice is done. And yet in discharging this obligation he must remain fair and dispassionate, eschewing the role of an advocate. While he may indicate to the jury . . . his opinion . . . he must leave that question open to the jury. . . . [H]e should, in his instructions to the jury make it clear that his opinion was for their consideration but was not binding upon them. . . . [T]he judge must be most circumspect in what he says and does lest, inadvertently, his observations or his conduct prejudice the jury against one of the litigants. Ordinarily the jury have great respect for the trial judge and it is not difficult to understand how readily they are influenced by any suggestion coming from him, whether the suggestion be by word or by conduct." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Drouin*, 183 Conn 189, 192, 438 A.2d 863 (1981).

Because of the unique role of the trial judge and the potential he or she may have to exert influence over the jury, we must examine, in this case, whether the comments made by the trial judge were within permissible bounds. Our Supreme Court has given us some guidance. In a case in which the trial court's instructions virtually eliminated the jury's consideration of other relevant evidence, our Supreme Court found that the judge impermissibly invaded the jury's function. *Ladd* v. *Burdge*, 132 Conn 296, 299–300, 43 A.2d 752 (1945). That case involved the issue of undue influence in a will contest where the trial court, in its instructions, stated that "the only evidence" that the jury had before it as to that issue concerned the circumstances immediately attached to the execution of the will, thereby eliminating from the jury's consideration other relevant evidence. Our Supreme Court found that the court "practically told the jury how to decide disputed issues of fact and thus exceeded its power of comment on the evidence." Id., 299.

In the present case, the trial court went a step further and told the jury how to decide the issue of proximate cause. We agree with the defendant that the opinion offered by the trial court so influenced the jury that it was unfairly persuaded to ignore any evidence tending to disprove causation, including consideration of other injuries and the fact that there was a two and one-half year period between the accident and any treatment of Alison's knee. The opinion offered by the trial judge was prejudicial and deprived the defendant of a fair trial, and the curative instruction was not sufficient to overcome that prejudice. The damage was done once the seed was implanted in the jury's mind and damage control at that point was ineffective.

The judgment is reversed and the case is remanded to the trial court for a new trial.

In this opinion the other judges concurred.