******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* ANTHONY MAGARACI
(AC 42264)

DiPentima, C. J., and Keller and Flynn, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of assault in the first degree in connection with an altercation between the defendant and W during which the defendant stabbed W and B with a knife, the defendant appealed to this court. He claimed, inter alia, that there was insufficient evidence to support his conviction because the state failed to disprove beyond a reasonable doubt that he acted in self-defense. *Held*:

1. The state produced sufficient evidence to disprove the defendant's theory of self-defense beyond a reasonable doubt, as there was evidence, which the jury reasonably could have credited, that the defendant was the initial aggressor who had lunged at and stabbed W and, in the process, had stabbed B, and the jury was free to disbelieve the defendant's version of events; moreover, the jury reasonably could have determined that the state carried its burden of proving beyond a reasonable doubt that the defendant used deadly force against W despite the fact that he had actual knowledge of his ability to retreat safely, as he admitted on cross-examination that he could have walked away from W.

2. This court declined to review the merits of the defendant's claim that he was deprived of his constitutional right to a unanimous verdict when the trial court improperly charged the jury on self-defense by failing to expressly instruct the jury that it must unanimously agree on the factual basis for rejecting his theory of self-defense, the defendant having waived his claim of instructional error; the record indicated that the court provided defense counsel with a copy of its charge, which included the self-defense and unanimity instructions that were read to the jury, and with a meaningful opportunity to review the instructions, that the court solicited comments from counsel before and after it read the instructions to the jury, that defense counsel not only failed to object to the charge but indicated his satisfaction with it, and that counsel did not file a request to charge to alert the court to any potential issues with the charge.

Argued February 3—officially released June 23, 2020

*Procedural History*

Substitute information charging the defendant with two counts of the crime of assault in the first degree, brought to the Superior Court in the judicial district of Middlesex and tried to the jury before *Suarez, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

*Norman A. Pattis*, for the appellant (defendant).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, was *Michael A. Gailor*, state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Anthony Magaraci, appeals from the judgment of conviction, rendered following a jury trial, of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). The defendant claims that (1) the state adduced insufficient evidence to support his conviction because it had failed to disprove beyond a reasonable doubt that he acted in self-defense, and (2) the court improperly instructed the jury on self-defense. We conclude that the evidence sufficed to permit the jury, as the arbiters of the credibility of witnesses, reasonably to conclude that the defendant was the original aggressor and that he had stabbed the victims even though he could have safely retreated. We also conclude that the defendant waived any claim of instructional error. We, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Cheryl Bell invited her longtime friend, Tina Peraino, who was living in Florida, to visit and stay with her and her husband, Ryan Bell, over Memorial Day weekend, 2017. The defendant, who lived in West Haven and who was dating Peraino, accompanied Peraino. After meeting Peraino at the airport, the defendant and Peraino arrived at the Bells' residence in the early morning of Friday, May 26, 2017. On Friday night, following dinner, the defendant, Peraino, and Ryan Bell went to the house of the Bells' neighbor, Chris Abbatello, to socialize and to drink beer. Ryan Bell introduced Peraino to another guest, Justin Wyatt, and the two began conversing while the defendant was standing by Peraino. During the conversation, Wyatt made a derogatory comment about Peraino's job as a paralegal that made Peraino uncomfortable. After returning to the Bells' residence, the defendant stated that Wyatt "needs a crack in the mouth." According to Ryan Bell, the next day the defendant appeared "bitter" and "agitated" about that conversation that had occurred the night before. The defendant referred to Wyatt using an insulting scatological term.

On Sunday, Abbatello hosted a picnic at a state park. Between forty and sixty people were in attendance, including the defendant, Peraino, and Wyatt.[1] Around 5:30 p.m., the defendant, Peraino, and Ryan Bell left the picnic and went to the house of another neighbor of the Bells, Paula Bourdon and Tim Bourdon. An after party ensued at the Bourdons' house, which included socializing, drinking alcoholic beverages, and playing horseshoes. The defendant, Peraino, Ryan Bell, and Wyatt were drinking beer. Cheryl Bell was the only one of the group who was not drinking alcohol.

The defendant, who was "quite upset," said to Paula Bourdon that he "could handle himself" and displayed a knife that had been in his pocket. He also stated to

Paula Bourdon that "he knew Hells Angels and . . . was not the kind of person to be messed with." Around 8 p.m., Wyatt, who was holding a beer bottle in his right hand, turned around and, upon seeing the defendant, switched the beer bottle to his left hand and extended his right hand. The defendant did not shake Wyatt's hand, yelled that Wyatt had disrespected him, and shouted several times for Wyatt to go for a walk with him. Wyatt yelled back "absolutely not." Cheryl Bell, who had been standing nearby, shouted to Ryan Bell, who was playing horseshoes, to "come over." Ryan Bell then positioned himself in between the defendant and Wyatt. The defendant became "very upset," lunged at Wyatt, and the two began "to swing at each other." Ryan Bell "grabbed" Wyatt, "pulled him back," and felt "a graze." Another guest, John Surprenant, stopped playing horseshoes and went over to see if he could help stop the altercation. After the altercation, the defendant stated, "that will teach you," and placed the folding knife in his pocket.

After a few moments, Wyatt felt a "hot coffee" like sensation, and upon lifting his sweatshirt, noticed "blood gushing" from his abdomen. He began to have trouble breathing. Ryan Bell also sustained a stab wound. Tyler Peska, who was also at the Bourdons' gathering, called 911. Both Wyatt and Ryan Bell were transported to a hospital for treatment. Wyatt had a four centimeter by two centimeter stab wound to his abdomen that caused an apical pneumothorax, or air outside the apex of his lung. He was admitted to the hospital for monitoring and released the following day. Ryan Bell had an eight centimeter stab wound on his left abdomen that did not penetrate "the strength layers of the abdomen" and was discharged after receiving stitches.

Corporal Bryan Pellegrini, a member of the Clinton Police Department and the lead investigator on the case, responded to the scene, and he and other Clinton officers took statements from witnesses after the stabbings. He did not take statements from some individuals because they were too intoxicated. The police recovered the broken neck of a beer bottle approximately fifty feet from where the incident had taken place. Forensic testing revealed that the DNA on the mouth of the beer bottle matched Wyatt's DNA profile. Pellegrini went to the hospital, noticed that Wyatt was "still making sense," and took Wyatt's statement while he was awaiting treatment. According to blood tests taken at the hospital, Wyatt's blood alcohol content was 0.167 percent and Ryan Bell's blood alcohol content was 0.07 percent.[2]

After the altercation, the defendant and Peraino walked quickly toward the Bells' house and packed their belongings. On their way to a restaurant near Bradley International Airport, the defendant threw the knife out

the car window. As he was leaving the restaurant, the defendant was arrested. Police officers did not notice any visible injuries to the defendant's head or face, but noticed a cut on the defendant's finger that he could not explain.

At trial, the defendant conceded that he had stabbed Wyatt and Ryan Bell, but contended that he did so in self-defense. The defendant testified to the following version of events regarding the altercation at the Bourdons' house. While he was conversing with Peraino and Cheryl Bell, Wyatt approached him carrying an empty beer bottle in his right hand. Wyatt switched the bottle to his left hand and asked if he wanted to shake hands. The defendant responded that if Wyatt apologized for his "rude and disrespectful behavior" then he would "be glad" to shake Wyatt's hand. Wyatt responded with an obscenity and began "posturing" in a way that made the defendant think that Wyatt was trying to "intimidate" and "terrorize" him with the beer bottle. He did not walk away because he thought that Wyatt would hit him on the head with the beer bottle if he turned his back. He told Wyatt, "please don't come at me with that beer bottle, if you do, you're gonna force me to defend myself with what I have in my pocket." Cheryl Bell yelled at Wyatt to "leave him alone," and called out to Ryan Bell. Then, "all of a sudden," Cheryl Bell was out of the way. The defendant "waited [until Wyatt] raised the bottle before [he] pulled the knife out of [his] pocket. And then, when [Wyatt] lunged forward with . . . the beer bottle, [he] went forward with the knife." The beer bottle "glanced off" the side of his head and Ryan Bell intercepted the path of the knife, apparently getting cut in the process. Wyatt grabbed him around the throat and the defendant "thrust again," stabbing Wyatt. On cross-examination, the defendant stated that he "could have walked away," but he did not.

Following a jury trial, the defendant was convicted of two counts of assault in the first degree. The court imposed a total effective sentence of twenty years of incarceration, suspended after nine years, with five years of probation. This appeal followed.

I

The defendant first claims that the state adduced insufficient evidence to prove beyond a reasonable doubt that he did not act in self-defense. We disagree.

The defendant preserved this claim by moving, at the close of the state's case, for a judgment of acquittal on the basis of insufficient evidence. Regardless of preservation, we review insufficiency claims because "any defendant who is found guilty on the basis of insufficient evidence has been deprived of a constitutional right and is entitled to review whether or not the claim was preserved at trial." *State* v. *Pommer*, 110 Conn. App. 608, 612, 955 A.2d 637, cert. denied, 289 Conn. 951,

961 A.2d 418 (2008), citing *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "In reviewing a sufficiency of the evidence claim, we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Merriam*, 264 Conn. 617, 628–29, 835 A.2d 895 (2003).

The jury was given evidence of two conflicting versions of events. In one, the defendant first lunged at Wyatt with a knife. In the other, the defendant was hit over the head with a beer bottle and defended himself with a knife from further injury. During closing argument, defense counsel conceded that the elements of assault in the first degree were satisfied as to Wyatt and Ryan Bell.[3] The theory of the defense was that the defendant stabbed Wyatt and Ryan Bell in self-defense. In support of his defense, the defendant relied on his own testimony and Peraino's testimony that Wyatt began the altercation by striking the defendant on the head with a beer bottle after he declined to shake Wyatt's hand. He also relied on the physical evidence of a broken neck portion of a beer bottle containing Wyatt's DNA that the police recovered approximately fifty feet from the scene of the altercation.

Self-defense is a defense, but not an affirmative defense, which means that the defendant only has a burden of production and does not have a burden of persuasion; once the defendant introduces sufficient evidence to warrant presenting his claim of self-defense to the jury, it is the state's burden to disprove the defense beyond a reasonable doubt. *State* v. *Singleton*, 292 Conn. 734, 747, 974 A.2d 679 (2009). Whether the state has disproved self-defense is a question of fact for the jury. *State* v. *Pauling*, 102 Conn. App. 556, 571–72, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007).

Section 53a-19 (a) provides in relevant part that "a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily

harm." Section 53a-19 (b) specifies the circumstances under which a person has a duty to retreat and provides in relevant part that "a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating . . . ." Section 53a-19 (c) provides: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

A jury's evaluation of a self-defense claim has both subjective and objective elements. See *State* v. *Hall*, 213 Conn. 579, 586 n.7, 569 A.2d 534 (1990). Section 53a-19 (b) requires both that a complete safe retreat be available and that the defendant know of it. See *State* v. *Quintana*, 209 Conn. 34, 46, 547 A.2d 534 (1988). To obtain a conviction, the state must sustain its burden of disproving beyond a reasonable doubt any of the essential elements of self-defense or sustain its burden of proving beyond a reasonable doubt that the statutory exceptions to self-defense codified in § 53a-19 (b) or (c) apply. See *State* v. *Grasso*, 189 Conn. App. 186, 200, 207 A.3d 33, cert. denied, 331 Conn. 928, 207 A.3d 519 (2019).

The defendant contends that the state failed to disprove that he acted in self-defense and that "the verdict in this case is the product of speculation." He argues that no reasonable juror would have credited the testimony of the five state's witnesses whose testimony contradicted the defendant's version of the events of the altercation: Wyatt, Ryan Bell, Cheryl Bell, Peska, and Surprenant, because they had "serious credibility issues, or simply lacked any real knowledge of the confrontation." The defendant argues that a reasonable juror would have questioned the veracity of these witnesses for the following reasons. Wyatt was intoxicated when he gave his statement to the police, which was inconsistent with his trial testimony. Peska testified that he did not remember who started the fight and the police officers declined to take his statement because they thought he was too intoxicated. The defendant contends that Cheryl Bell was biased against the defendant for ending her friendship with Peraino, which colored her testimony, and that she did not see the altercation because her husband, Ryan Bell pulled her out of the way before the altercation began. The defendant

notes that Cheryl Bell was the only one who testified that she heard him say, after stabbing Wyatt, "that will teach you." The defendant states that Cheryl Bell did not include the disputed comment in her statement to the police. He further contends that Surprenant's testimony was not credible because he did not see the fight start and the police did not take an official statement because officers thought he was too intoxicated. The defendant further argues that a reasonable juror would have determined that the following testimony of two of the state's witnesses corroborated his version of events: Surprenant's testimony that he heard the defendant say that Wyatt had tried to hit him with a beer bottle, and Ryan Bell's testimony that he did not recall seeing anything in Wyatt's hand at the time of the fight but heard a bottle break on the ground as Cheryl Bell called him over. The defendant also notes that Ryan Bell was on Pellegrini's list of witnesses whose official statements were not taken by investigative police officers because those witnesses were deemed intoxicated. He further argues that the state failed to explain the broken beer bottle that contained Wyatt's DNA.

The defendant essentially argues that the state failed to disprove self-defense because its eyewitnesses lacked credibility. However, it is not the role of this court to question the jury's credibility determinations. "[I]t is well established that we may not substitute our judgment for that of the [trier of fact] when it comes to evaluating the credibility of a witness. . . . It is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. . . . Questions of whether to believe or disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses."[4] (Internal quotation marks omitted.) *State* v. *DeMarco*, 311 Conn. 510, 519–20, 88 A.3d 491 (2014). Therefore, it was within the province of the jury to assess the credibility of the state's eyewitnesses, and the jury was not obligated to discredit the testimony of the witnesses whose credibility was called into question. See *State* v. *Owens*, 63 Conn. App. 245, 250, 775 A.2d 325, cert, denied, 256 Conn. 933, 776 A.2d 1151 (2001).

With these principles in mind, we conclude that the state produced sufficient evidence to disprove the defendant's theory of self-defense beyond a reasonable doubt. There was evidence, which the jury reasonably could have credited, that the defendant was the initial aggressor who lunged at and stabbed Wyatt and, in the process, stabbed Ryan Bell. Wyatt testified that he did not threaten the defendant with a beer bottle and that the defendant was the one who "came at" him. Cheryl Bell testified that the defendant threw the first punch. Ryan Bell testified that, after Cheryl Bell called him

over, he saw a scuffle and pulled Wyatt back as the defendant was lunging at Wyatt. The defendant testified that, after the altercation, he discarded the knife. Additionally, the fact that the police did not take official statements from certain witnesses because the police officers thought they were too intoxicated, does not obligate the jury to abandon its role as the sole arbiter of the credibility of these witnesses and automatically discount their testimony. Rather, it is the unique role of the jury to weigh conflicting evidence, to determine the credibility of witnesses, and to decide whether to accept or reject, in whole or in part, the testimony of a witness. See, e.g., *State* v. *Terry*, 161 Conn. App. 797, 800 n.2, 128 A.3d 958 (2015), cert. denied, 320 Conn. 916, 131 A.3d 751 (2016). Although some witnesses reported hearing a bottle crash as the altercation began, the broken beer bottle containing Wyatt's DNA was found fifty feet from the scene of the altercation. To the extent that such evidence can be seen as supporting the defendant's theory, evidence is not insufficient because it is inconsistent or conflicting. See *State* v. *Vega*, 128 Conn. App. 20, 27, 17 A.3d 1060, cert. denied, 301 Conn. 919, 21 A.3d 463 (2011). The existence of evidence which, under one interpretation, could be viewed as supporting the defendant's version of events does not obligate the jury to interpret it in that light. See, e.g., *State* v. *Terry*, supra, 800 n.2. The jury was free to disbelieve the defendant's version of events that Wyatt was about to inflict great bodily harm on him by hitting him on the head with a beer bottle and that he "went forward" with a knife after Wyatt lunged at him with a beer bottle. The jury also was free to disbelieve the portion of the defendant's testimony that he had asked Wyatt not to attack him with the beer bottle, otherwise he would have to defend himself with a knife. Additionally, even if the jury credited the defendant's version of events, the jury reasonably could have determined that the state carried its burden of proving beyond a reasonable doubt that the defendant used deadly force against Wyatt despite the fact that he had actual knowledge of his ability to retreat safely. The defendant admitted on cross-examination that he "could have walked away."

For the foregoing reasons, we conclude that the defendant cannot prevail on his insufficiency claim.

## II

The defendant next claims that he was deprived of his right, under article first, §§ 8 and 19, of the Connecticut constitution, to a unanimous verdict when the court improperly charged the jury on self-defense by failing to expressly instruct the jury that it must unanimously agree on the factual basis for rejecting the defendant's theory of self-defense. The state responds that the defendant implicitly waived this claim. We agree with the state and, accordingly, do not reach the merits of this claim.

The state filed a request to charge on March 20, 2018. Defense counsel did not file a request to charge. On March 21, 2018, the court stated that it had incorporated comments from both counsel into its jury charge and had a draft ready for counsel to review overnight. The draft charge included the self-defense and unanimity instructions that were later read to the jury the following day.[5] On March 22, 2018, the court noted on the record that it had held an in-chambers charge conference that morning and had accepted all of the suggestions made by the state and the defendant. The court stated it would detail the changes for the record if either counsel so requested. The state responded that it was satisfied and that it was not necessary to go through the changes. Defense counsel responded, "I'm very satisfied. Thank you. I think it's an excellent charge." The court inquired if both counsel had an opportunity to review the charge, and defense counsel answered affirmatively. After the court read its final charge to the jury, outside the presence of the jury, the court asked defense counsel if he had any objection. Defense counsel responded, "I have nothing. I thought it was good."

We exercise plenary review when determining whether a defendant waived the right to challenge a jury instruction. See *State* v. *Mungroo*, 299 Conn. 667, 672–73, 11 A.3d 132 (2011). "Connecticut courts have deemed a claim of instructional error implicitly waived when the defense failed to take exception to, and acquiesced in, the jury instructions following one or more opportunities to review them. . . . [W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." (Citations omitted.) *State* v. *Kitchens*, 299 Conn. 447, 480–83, 10 A.3d 942 (2011).

The circumstances of the present case are similar to those in *State* v. *Davis*, 163 Conn. App. 458, 136 A.3d 257 (2016). In that case, this court determined that the doctrine of implied waiver precluded substantive review of the defendant's claim of instructional impropriety where the court provided counsel with a copy of the proposed instructions the day before the charge conference, the parties indicated during the conference that they had reviewed the proposed instructions, defense counsel indicated one change to the instructions and otherwise stated that the instructions were " 'fair to both parties,' " and defense counsel voiced no objection to the instruction at issue. Id., 478–79.

Following our careful review of the record, we con-

clude that the defendant implicitly waived this instructional claim. The record reflects that, at least one day before it instructed the jury, the court provided counsel with copies of its charge, which included the self-defense and unanimity instructions that were read to the jury. Under these circumstances, defense counsel had a meaningful opportunity to review the instructions. See id. The court solicited comments from counsel before and after it read the instructions to the jury. Defense counsel not only failed to object, but he also indicated that he was "very satisfied" with the court's "excellent charge." Defense counsel did not file any request to charge with the court alerting it to any claim regarding the jury instructions of the kind now raised on appeal. Because defense counsel implicitly waived this claim of instructional impropriety, we do not review the merits of this claim.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Wyatt testified that he had no contact with the defendant or Peraino at the picnic other than briefly introducing them to a friend. Peraino testified that Wyatt told her that she would have more fun if she were with him instead of the defendant. Peraino testified that both she and the defendant thought that comment was disrespectful. Other guests testified that they did not see any interaction between Wyatt and either Peraino or the defendant.

[2] General Statutes § 14-227a (a) (2) provides in part that a person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor if that person operates a motor vehicle while having a blood alcohol content of 0.08 percent or more.

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[4] Witness competency is within the discretion of the trial court. See *State* v. *Webb*, 75 Conn. App. 447, 462–63, 817 A.2d 122, cert. denied, 263 Conn. 919, 822 A.2d 244 (2003). The testimony at issue was admitted into evidence, and there is no dispute regarding the competency of these witnesses.

[5] The court charged the jury on the elements and exceptions to self-defense and further charged: "You must remember that a defendant has no burden of proof whatsoever with respect to the defense of self-defense. Instead, it is the state that must prove beyond a reasonable doubt that the defendant did not act in self-defense if it is to prevail on its charge of crime of assault in the first degree. To meet this burden, the state need not disprove all four of the elements of self-defense. Instead, it can defeat the defense of self-defense by disproving any one of the four elements of self-defense beyond a reasonable doubt to your unanimous satisfaction."

[6] The defendant contends that his claim is of constitutional magnitude because it implicates the constitutional right to a unanimous verdict and otherwise satisfies the requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781,120 A.3d 1188 (2015). Because the defendant implicitly waived his instructional claim, he cannot obtain relief under *Golding*. See *State* v. *Ramon A. G.*, 190 Conn. App. 483, 503 n.13, 211 A.3d 82, cert. granted on other grounds, 333 Conn. 909, 215 A.3d 735 (2019). "A constitutional claim that has been waived does not satisfy [*Golding*'s] third prong . . . because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 467.