STATE OF CONNECTICUT *v.* TRAVIS DAVIS
(AC 17983)

O'Connell, C. J., and Lavery and Spear, Js.

Argued September 14—officially released December 8, 1998

*John M. Barton III*, special public defender, for the appellant (defendant).

*Ellen A. Jawitz*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Roger Dobris*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Travis Davis, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1),[1] attempt to commit assault of a peace officer

---

[1] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical

in violation of General Statutes §§ 53a-49 (a) (2) and 53a-167c (a) (1),[2] commission of a class A, B or C felony with a firearm in violation of General Statutes § 53-202k[3] and criminal possession of a pistol in violation of General Statutes § 53a-217.[4] The jury also found the defendant to be a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a)[5] and a persistent serious felony offender in violation of General Statutes § 53a-40 (b).[6] The defendant claims that the trial court improperly (1) failed to declare a mistrial

injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ."

[3] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B, or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm . . . shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[4] General Statutes § 53a-217 provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when he possesses a firearm . . . and has been convicted of . . . a class A felony . . . a class B felony . . . a class C felony . . . ."

[5] General Statutes § 53a-40 (a) provides in relevant part: "A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, aggravated sexual assault in the first degree, sexual assault in the third degree with a firearm, robbery in the first or second degree, or assault in the first degree, and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution, for any of the following crimes: (A) The crimes enumerated in subdivision (1) of this subsection, murder, or an attempt to commit any of said crimes or murder . . . ."

[6] General Statutes § 53a-40 (b) provides in relevant part: "A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year . . . in this state . . . for a crime. . . ."

after a state's witness testified about other crimes that were inadmissible as evidence, (2) sentenced the defendant as a persistent dangerous felony offender, (3) denied the defendant's motion to sever or bifurcate the criminal possession of a firearm count and (4) rendered judgment convicting the defendant of the crime of commission of a class A, B or C felony with a firearm, pursuant to General Statutes § 53-202k.[7] We reverse the judgment only as to the counts that charged the defendant as a persistent dangerous felony offender and with commission of a class A, B or C felony with a firearm.

The jury reasonably could have found the following facts. On March 8, 1994, the New Haven police department was informed that the defendant, for whom the department had an outstanding arrest warrant, was standing at the corner of Chapel and Day Streets in New Haven. The officers had been given a physical description of the defendant, and were warned that he was believed to be armed and dangerous. A number of plainclothes officers converged on the location in two cars. After two officers exited the first car, approached the defendant and identified themselves as police officers, the defendant turned to look at them and then ran east on Chapel Street. The two officers, joined by officers from the second car, ran after the defendant. During the pursuit, Detective-Sergeant Michael Sweeney was the officer closest to the defendant. At some point during the pursuit, the defendant pulled a gun from his waistband and kept it pointed toward the ground. Soon thereafter, the defendant turned to look back at the officers, raised his gun and pointed it at Sweeney. Another detective yelled, "Mike, he's got a gun," prompting Sweeney to shoot the defendant, who fell to the ground. The police recovered the defendant's

[7] The defendant raised no issues with respect to the judgment of conviction of violation of probation. We therefore dismiss the appeal as to that judgment. See Practice Book § 63-4 (a) (1).

semiautomatic nine millimeter pistol. The hammer was in the firing position with a round in the chamber and a full magazine of ammunition. The defendant was arrested and subsequently convicted of the charges previously enumerated. This appeal followed.

## I

The defendant first claims that the trial court abused its discretion by improperly denying his motion for a mistrial that was precipitated by Sweeney's testimony about other crimes in which the defendant was a suspect.[8] We disagree.

On direct examination, Sweeney testified that he "had knowledge of the danger involved in the apprehension of [the defendant]" because the police had received telephone calls advising them that the defendant was committing armed robberies.[9]

---

[8] Prior to the commencement of evidence at trial, the trial court granted the defendant's motion in limine, which prohibited the prosecution from eliciting testimony by the state's witnesses regarding why the police were looking for the defendant to question him in connection with a murder investigation. The prosecution then instructed its witnesses accordingly.

Upon calling its first witness, the state attempted to introduce a copy of the outstanding arrest warrant for the defendant. The defense objected and made a motion for the warrant to be redacted to omit the crimes charged. The trial court granted the motion. Shortly thereafter, the defendant made a motion to expand the scope of the motion in limine. The following colloquy ensued, excerpted from the trial transcript:

"[Defense Counsel]: [M]aybe I should make a motion to extend the scope of my motion in limine just to prevent any eliciting of any information regarding any of the substantive charges that were the subject of the arrest warrant in addition to the murder inquiry . . . .

"[Assistant State's Attorney]: I wasn't going to make a reference to it based on Your Honor's ruling. I understand not only did Your Honor technically make a ruling but there was a spirit to that ruling, and I will observe and follow that ruling.

"The Court: All right. . . ."

[9] "Q. You said just a moment ago that you had information that the suspect, the defendant, Travis Davis, was to be considered armed and dangerous. Do you know why?

"A. Yes, I do.

"Q. Why is that, sir?

Outside the presence of the jury, the defendant made a motion for a mistrial and asserted that Sweeney's testimony about the robberies violated the trial court's order not to testify about other crimes in which the defendant may have been a suspect. The trial court disagreed that the answer was in violation of the order and denied the motion.

The defendant maintains that this testimony was sufficiently prejudicial to deprive him of his rights to due process and a fair trial in violation of the fifth, sixth and fourteenth amendments to the United States constitution, and article first, §§ 8 and 9, of the constitution of Connecticut.[10]

"While the remedy of a mistrial is permitted under the rules of practice it is not favored. [It] should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . *State* v. *Wooten,* [227 Conn. 677, 693–94, 631 A.2d 271 (1993)]. On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function

---

"A. We had received information and I also overheard detectives talking that evening that this person was in possession of a gun and that there were statements made that he wasn't going to be taken easy. We had received telephone calls that this person was committing armed robberies and—

"[Defense Counsel]: Objection, Your Honor.

"The Court: Sustain the objection. The answer is stricken. The jury is to disregard that comment."

[10] The defendant invokes both the United States constitution and the constitution of the state of Connecticut in support of his claims in his brief. He has not, however, provided any independent analysis of the state constitutional claims. We therefore decline to review them. See *State* v. *Christiano,* 228 Conn. 456, 466 n.10, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994); see also *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

is to assure a fair and just outcome. *State* v. *Rodriguez*, 210 Conn. 315, 333, 554 A.2d 1080 (1989); *State* v. *Bausman*, 162 Conn. 308, 312, 294 A.2d 312 (1972). *State* v. *Bowman*, 46 Conn. App. 131, 136–37, 698 A.2d 908 (1997). *State* v. *Henderson*, 47 Conn. App. 542, 557, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998)." (Internal quotation marks omitted.) *State* v. *Taveras*, 49 Conn. App. 639, 652, 716 A.2d 120, cert. denied, 247 Conn. 917, 722 A.2d 809 (1998).

The decision whether to grant a mistrial is within the sound discretion of the trial court. *State* v. *Wooten*, supra, 227 Conn. 693; see Practice Book § 42-43, formerly § 887.[11] "The trial court's exercise of its broad discretion to determine whether a motion for a mistrial should be granted will be reversed on appeal only if that discretion has been abused." *State* v. *Cruz*, 212 Conn. 351, 364, 562 A.2d 1071 (1989). Thus, we afford "every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987); *State* v. *Howard*, 187 Conn. 681, 685, 447 A.2d 1167 (1982); *State* v. *Jones*, 46 Conn. App. 640, 652, 700 A.2d 710, cert. denied, 243 Conn. 941, 704 A.2d 797 (1997).

Here, Sweeney's statement was entirely responsive to the question asked during the state's direct examination. Following the defendant's objection, the trial court immediately ordered that the testimony be stricken and instructed the jury to disregard the statement. "It is to be presumed that the jury followed the court's instructions unless the contrary appears." *State* v. *Rouleau*, 204 Conn. 240, 254, 528 A.2d 343 (1987); see also *State* v. *Traficonda*, 223 Conn. 273, 283, 612 A.2d 45 (1992)

---

[11] Practice Book § 42-43, formerly § 887, provides in relevant part: "Upon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case. . . ."

("trial court promptly struck the witness' response, immediately admonished the jurors to 'erase it from your minds' and told them not to consider the statement in their deliberations"). Under the circumstances here, we conclude that the trial court did not abuse its discretion by denying the defendant's motion for a mistrial.

## II

The defendant next claims that the jury improperly found him to be a persistent dangerous felony offender and the trial court improperly sentenced him as such. Specifically, the defendant asserts that his conviction of attempt to commit assault in the first degree is not one of the felonies enumerated in General Statutes § 53a-40 (a) (1). The state concedes that the jury's finding that the defendant is a persistent dangerous felony offender should be vacated.[12]

General Statutes § 53a-40 (a) provides in relevant part: "A persistent dangerous felony offender is a person who (1) stands convicted of . . . assault in the first degree, and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution, for any of the following crimes: (A) The crimes enumerated in subdivision (1) of this subsection, murder, or an attempt to commit any of said crimes or murder . . . ."[13]

"As with any issue of statutory interpretation, our initial guide is the language of the statute itself. . . . *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 756, 674 A.2d 1313 (1996)." (Internal quotation marks omitted.) *State*

---

[12] The state does not concede that the trial court actually sentenced the defendant as a persistent dangerous felony offender.

[13] The defendant also was found to be a persistent serious felony offender. He does not, however, challenge that finding.

v. *Ledbetter*, 240 Conn. 317, 328, 692 A.2d 713 (1997), citing *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 102, 680 A.2d 1321 (1996). Furthermore, "[b]ecause [§ 53a-40] is a punitive statute, the generally recognized rules of statutory construction normally would require the strictest of interpretations . . . limiting any application of the statute to the words used." *State* v. *Ledbetter*, supra, 330, citing 3 J. Sutherland, Statutory Construction (5th Ed. Singer 1992) §§ 58.02, 59.03, pp. 72, 102.

The plain language of the statute makes clear that attempt crimes are not among those of which a defendant must *presently* stand convicted to qualify as a persistent dangerous felony offender. Here, the defendant stood convicted of *attempted* assault in the first degree, which is not a predicate felony enumerated under § 53a-40 (a).

We now turn to the question of whether this improper jury finding mandates a new sentencing hearing. The state claims that the trial court did not actually sentence the defendant as a persistent dangerous felony offender because all the sentences imposed were within the statutory limits and not enhanced beyond those limits as is permitted by § 53a-40 (f).[14] While the trial court did not sentence in excess of the statutory limits, we do

[11] General Statutes § 53a-40 (f) provides: "When any person has been found to be a persistent dangerous felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, shall sentence such person to a term of imprisonment of not more than forty years and, if such person has, at separate times prior to the commission of the present crime, been twice convicted of and imprisoned for any of the crimes enumerated in subdivision (2) of subsection (a) of this section, sentence such person to a term of imprisonment of not more than life."

not know whether the improper finding played a role in the trial court's sentencing decision. The perception of fairness should attend all court proceedings. See *State* v. *Strickland*, 243 Conn. 339, 354, 703 A.2d 109 (1997). In the interest of perceived and actual fairness, we vacate the sentence and remand the case for a new sentencing hearing.

## III

The defendant next claims that the trial court abused its discretion in denying the defendant's pretrial motion to sever or, in the alternative, to bifurcate the trial on the fourth count that alleged criminal possession of a pistol in violation of General Statutes § 53a-217.[15] Proof of a prior felony conviction is necessary to prove this count, and the defendant asserts that such evidence would have a prejudicial impact on the jury in its consideration of the other counts. The defendant further maintains that any prejudicial impact was increased because the trial court failed to issue any cautionary instruction to the jury and the defendant himself did not testify. We disagree.

At trial, the defendant stipulated that he was previously convicted of a class B felony on July 13, 1990. The trial court reread the criminal possession of a firearm count to the jury and informed it of the stipulation, but did not give a limiting instruction. The defendant was ultimately convicted on this count.

Our rules of practice allow a trial court to order, sua sponte or upon motion of the defendant, a separate trial of two offenses if it appears that the defendant is prejudiced by the joinder of the offenses. See Practice Book § 41-18, formerly § 828. "The question of severance lies within the discretion of the trial court. We will not disturb the trial court's conclusion on the issue

---

[15] See footnote 4.

absent a clear abuse of discretion. The discretion to sever a trial should be exercised only if a joint trial will substantially prejudice the defendant. Substantial prejudice is more than disadvantage and the formidable task of demonstrating an abuse of discretion and that a joint trial resulted in substantial prejudice falls to the defendant. *State* v. *Smith*, 201 Conn. 659, 669, 519 A.2d 26 (1986); *State* v. *Schroff*, 198 Conn. 405, 408, 503 A.2d 167 (1986); *State* v. *Rodgers*, 198 Conn. 53, 63, 502 A.2d 360 (1985); *State* v. *Wiggins*, 7 Conn. App. 95, 101, 507 A.2d 518 (1986). Simply put, the test to be applied is whether substantial injustice will result if the charges are tried together. *State* v. *King*, [187 Conn. 292, 299, 445 A.2d 901 (1982)]; *State* v. *Oliver*, 161 Conn. 348, 360–61, 288 A.2d 81 (1971)." (Internal quotation marks omitted.) *State* v. *Banta*, 15 Conn. App. 161, 167, 544 A.2d 1226, cert. denied, 209 Conn. 815, 550 A.2d 1086 (1988), quoting *State* v. *Edwards*, 10 Conn. App. 503, 506–507, 524 A.2d 648, cert. denied, 204 Conn. 808, 528 A.2d 1155 (1987).

The trial court correctly applied *State* v. *Banta*, supra, 15 Conn. App. 161, in its decision not to sever or bifurcate the count at issue. In *Banta*, the defendants were charged with violating General Statutes § 53a-217[16] and each requested that the trial court sever that count for a separate trial. The trial court denied the motions. The *Banta* defendants likewise claimed that they were substantially prejudiced because proof of a prior felony conviction was an essential element of General Statutes § 53a-217. In determining whether one of the *Banta* defendants was so prejudiced, this court set forth five factors to evaluate: (1) the manner in which the evidence entered the case and the extent of the jury's knowledge of the facts underlying the prior felony conviction, (2) the adequacy of any cautionary instructions

[16] The *Banta* defendants were also being tried on a charge of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).

given by the court, (3) the use of the prior felony evidence by the prosecution in argument to the jury, (4) the likelihood that the prior felony conviction evidence will inflame the passions of the jurors in light of the nature of the offenses charged and (5) the strength of the evidence against the defendant. See *State* v. *Banta,* supra, 170–71. We will analyze the defendant's claim in light of these factors.

A

The first factor requires consideration of the manner in which the evidence of the defendant's prior felony conviction was entered and how much detail the jury received with respect to this prior conviction. Here, the jury was made aware of the defendant's prior felony conviction by way of a stipulation through which the jury learned only that the defendant was convicted of a class B felony on July 13, 1990. The jury was not told the nature of the felony or the punishment that the defendant received. This factor does not weigh in the defendant's favor.

B

The second factor deals with the adequacy of any cautionary instruction given by the trial court. Our review of the record reveals that the trial court did not give any cautionary instruction; however, this in itself does not necessarily indicate that the defendant suffered substantial prejudice so as to require a separate trial.[17] It is only one of the five factors to be weighed by this court in determining whether the trial court should have ordered a separate trial. See id., 171. This factor does weigh in the defendant's favor.

---

[17] Additionally, the transcript reveals that the defendant stated that he had no exceptions to the trial court's charge to the jury, which included no caution to the jury that the prior felony evidence should not be used for any purpose other than proving an essential element of the crime of criminal possession of a pistol.

## C

The third factor regards the use of the defendant's prior felony conviction in the prosecution's argument to the jury. Here, the prosecutor made a single reference to the conviction during the state's rebuttal argument. In characterizing Sweeney, the prosecutor stated that "[h]e's a member of the helping profession. He's a nurse, he's a teacher. He's not a felon with a gun on the street. That's the stark contrast. You have Sweeney, the teacher, the nurse, the policeman, a member of the helping and healing professions, ladies and gentlemen, and we have the defendant." During its argument, the prosecutor merely reiterated the bare information that the jury already knew based on the stipulation regarding the defendant's conviction. Therefore, it is unlikely that this single reference to the defendant's prior felony status would substantially prejudice the defendant. This factor weighs in favor of the state.

## D

The defendant argues that the evidence of his prior felony conviction was likely to inflame the passions of the jurors in light of the nature of the offenses charged and caused the defendant to be unduly prejudiced.

In his brief, the defendant claims that this case was of a "highly inflamed nature" because it "involved a chase on foot between an armed defendant and four police officers, one of whom ended up shooting the defendant." While this presents a violent factual scenario, the jury had evidence that there was an outstanding arrest warrant for the defendant, that the police had received information that the defendant was standing on a street corner armed with a gun and that the defendant aimed this gun at a police officer. In light of the foregoing, it is not likely that the evidence of the class B felony inflamed the passions of the jury. While evidence of a prior felony conviction may ultimately be

disadvantageous to the defendant, it is an essential element of General Statutes § 53a-217. This factor also weighs in the state's favor.

E

The last factor to be considered is the strength of the evidence against the defendant. As in *Banta,* the evidence against the defendant in this case "was neither sparse nor unconvincing." *State* v. *Banta,* supra, 15 Conn. App. 172. Here, multiple witnesses testified about the event in question, as discussed in section D of this part. Additional testimony demonstrated that the police recovered the defendant's loaded gun from the scene with the hammer in the firing position and a round in the chamber. In light of this substantial evidence against the defendant, it is highly unlikely that evidence of the defendant's prior unnamed felony conviction prejudiced the jury so as to affect the outcome of the case. This factor does not support the defendant's claim.

Applying all five factors to the circumstances of this case, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to sever or bifurcate the criminal possession of a pistol count.

IV

The defendant's last claim is that the trial court improperly rendered judgment convicting him of committing of a class A, B or C felony with a firearm, pursuant to General Statutes § 53-202k.[18] He specifically claims that this statute is not a separate criminal offense, but rather is a sentence enhancement provision. We agree and vacate the defendant's conviction, but do not disturb the five year consecutive sentence.[19]

---

[18] See footnote 3.

[19] The state concedes that the defendant's conviction under General Statutes § 53-202k should be vacated because this statute is not a separate criminal offense. The state argues, however, that the five year consecutive sentence imposed on the defendant pursuant to § 53-202k was proper.

As a preliminary matter, the defendant claims that while this issue was not properly preserved for appellate review, it is nonetheless reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). We agree.[20]

"Our Supreme Court has recently held that '§ 53-202k is a sentence enhancement provision and not a separate crime.' *State* v. *Dash*, 242 Conn. 143, 150, 698 A.2d 297 (1997). In *Dash*, the court recognized that the defendant's total effective sentence was proper, but modified the judgment to 'reflect the fact that § 53-202k does not constitute a separate offense.' Id. Accordingly, the defendant is entitled to have his conviction under § 53-202k vacated." *State* v. *Carter*, 47 Conn. App. 632, 649, 708 A.2d 213, cert. denied, 244 Conn. 909, 713 A.2d 828 (1998).

*Dash* and its progeny mandate that the defendant's conviction under § 53-202k be vacated, but that the sentence imposed be affirmed. Pursuant to § 53-202k, the trial court properly added the mandatory five year enhancement to the defendant's total sentence. See *State* v. *Dash*, supra, 242 Conn. 150.

The judgment is reversed with respect to the separate conviction of violating General Statutes § 53-202k and with respect to the conviction as a persistent dangerous felony offender under General Statutes § 53a-40 (a) and the case is remanded for a new sentencing hearing on all charges.[21]

In this opinion the other judges concurred.

---

[20] See footnote 12.

[21] The mandatory five year sentence pursuant to General Statutes § 53-202k shall be imposed consecutively as directed by that statute.