STATE OF CONNECTICUT *v.* OSCAR ABRAHAM
(AC 20500)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued December 12, 2000—officially released July 24, 2001

*Mark Diamond*, special public defender, for the appellant (defendant).

*Linda N. Howe*, assistant state's attorney, with whom, on the brief, was *Robert Brennan*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Oscar Abraham, appeals from the judgments of conviction, rendered following a jury trial, of two counts of robbery in the

first degree in violation of General Statutes § 53a-134 (a) (2),[1] conspiracy to commit robbery in the first degree in violation of General Statutes § 53a-48,[2] criminal possession of a pistol or revolver in violation of General Statutes (Rev. to 1997) § 53a-217c,[3] carrying a pistol or revolver without a permit in violation of General Statutes (Rev. to 1997) § 29-35 (a)[4] and possession of a weapon in a motor vehicle in violation of General Statutes (Rev. to 1997) § 29-38.[5] On appeal, the defendant claims that the trial court improperly (1) denied his motion for a mistrial and impermissibly permitted the state to introduce evidence of his prior convictions and (2) denied his motion for a judgment of acquittal when the state failed to prove his guilt beyond a reasonable

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes (Rev. to 1997) § 53a-217c (a) provides in relevant part: "A person is guilty of criminal possession of a pistol or revolver when he possesses a pistol or revolver, as defined in section 29-27, and (1) has been convicted of a felony or of a violation of subsection (c) of section 21a-279, section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d . . . ."

[4] General Statutes (Rev. to 1997) § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

[5] General Statutes (Rev. to 1997) § 29-38 provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ."

doubt. The defendant additionally contends that (1) he received ineffective assistance of legal counsel in violation of his federal and state constitutional rights, (2) his conviction of the crimes of robbery in the first degree and criminal possession of a pistol or revolver violated his constitutional right against double jeopardy, and (3) the trial court's instructions to the jury improperly diminished the presumption of innocence standard and shifted the state's burden of proof. Further, the defendant asserts in his supplemental brief that his conviction of the crime of conspiracy to commit robbery should be vacated because the codefendant in this joint trial was acquitted of the charge.[6] We agree with the defendant's claim on the conspiracy charge, but affirm the judgments of the trial court on all other claims.

The jury reasonably could have found the following facts. On October 21, 1998, at approximately 4:45 a.m., the defendant and another man alleged to be Israel Garcia purchased food from a grocery store that was owned by William Acevedo and Augberto Gonzalez. Shortly thereafter, Acevedo was confronted by two men dressed in black and wearing black masks. The taller of the two men, later found to be the defendant, held a pistol and stole $160 from Acevedo. When Acevedo resisted, the defendant fired the pistol in the direction of the ground and again in the direction of Acevedo as he fled to the back of the store. The other robber held a customer down on the floor at knifepoint.

William Reilly, a police officer from the Bridgeport police department, arrived at the grocery store to investi-

---

[6] During the pendency of this appeal, this court, sua sponte, ordered the parties to file supplemental briefs to address the following question: "Under the circumstances set forth in the above captioned case, wherein two defendants charged with conspiracy to commit robbery were tried together and one was found not guilty of conspiracy, do we review under the plain error doctrine the issue of whether, in a conspiracy case involving two conspirators, when one is acquitted of conspiracy, the charge of conspiracy can stand against the other? See *State* v. *Robinson*, 213 Conn. 243, 251, 567 A.2d 1173 (1989)."

gate the robbery. He discovered the shell casing of a ten millimeter bullet on the floor of the store. After interviewing Acevedo, Reilly disseminated a police broadcast with the description of the perpetrators and the automobile in which they drove. A few hours later, Officer Daniel Garcia of the Bridgeport police department spotted a motor vehicle that matched the description in the police broadcast. After a short chase, the driver of the motor vehicle pulled over, and the three occupants of the automobile ran away. The driver of the motor vehicle leaped over a fence and escaped, but left his jacket behind. The police officer described the driver as a tall Hispanic male. Inside the jacket pocket, Officer Garcia found a live ten millimeter bullet.

The two other occupants of the car were apprehended shortly thereafter. One of the passengers, a short male wearing dark clothing, was later identified as the codefendant Israel Garcia. The other passenger was identified as Denise Holland. Later that day, Holland provided a statement to the police in which she claimed that the defendant and the codefendant Garcia had robbed the grocery store.

Two days later, on October 23, 1998, while on patrol at a housing project, Brian Fitzgerald, a police officer from the Bridgeport police department, saw a maroon Acura that matched the description of an automobile on the police list of stolen vehicles.[7] As the motor vehicle pulled into a parking space, Fitzgerald's partner drove the patrol vehicle behind the maroon Acura to prevent it from moving. The four occupants of the maroon Acura got out of the automobile and began to run away. Fitzgerald observed that the front passenger appeared to have an object in his waistband resembling the shape of a gun

---

[7] The suspicious motor vehicle that was the subject of events on October 23, 1998, was not the motor vehicle that the defendant drove away in after robbing the grocery store on October 21, 1998.

and ordered the man to stand still and to show his hands. The front passenger was later identified as the defendant.

The defendant ran away from Fitzgerald, pulled a black handgun out of his waistband and threw the weapon onto the ground. Witnessing the defendant dispose of the weapon, Fitzgerald picked up the handgun and, after a short chase, apprehended the defendant. The handgun was loaded with four rounds. Fitzgerald identified the man as the defendant and arrested him. The defendant was charged in two informations. In the first case, he was charged for the events that transpired when he was apprehended on October 23, 1998, and, in the second case, for the events that transpired on October 21, 1998, when the grocery store was robbed.

The defendant and the codefendant Garcia were tried jointly before a jury regarding the charges of robbery and conspiracy to commit robbery.[8] On November 19, 1999, the defendant was found guilty of all charges and convicted of two counts of robbery in the first degree in violation of § 53a-134 (a) (2), conspiracy to commit robbery in the first degree in violation of § 53a-48, criminal possession of a pistol or revolver in violation of § 53a-217c, carrying a pistol or revolver without a permit in violation of § 29-35 (a) and possession of a weapon in a motor vehicle in violation of § 29-38. The codefendant Garcia, however, was acquitted of all charges, including the charge of conspiracy to commit robbery. This appeal followed. Additional facts will be discussed where relevant to the claims raised.

I

During the pendency of this appeal, we ordered the parties to submit supplemental briefs to address whether

[8] In this joint trial, the codefendant Garcia was tried on the charges of two counts of robbery in the first degree and conspiracy to commit robbery based on the events that occurred at the grocery store on October 21, 1998.

this court should review under the plain error doctrine[9] the issue of whether, in a joint trial, the conviction of one codefendant of the charge of conspiracy to commit robbery can stand when the other codefendant is acquitted of the charge. In his supplemental brief, the defendant contends that his conviction for conspiracy to commit robbery constitutes plain error and a legal impossibility when his codefendant in the joint trial was acquitted of the charge. We agree and conclude that the trial court committed plain error and, therefore, reverse the judgment of conviction of conspiracy to commit robbery in the first degree.

It is well established that this court will exercise plain error review under only the rarest of circumstances. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Wright*, 207 Conn. 276, 288–89, 542 A.2d 299 (1988). This court may "in the interests of justice notice plain error not brought to the attention of the trial court." (Internal quotation marks omitted.) *State* v. *Thornton*, 55 Conn. App. 28, 31, 739 A.2d 271 (1999). "As explained in detail in *Lynch* v. *Granby Holdings, Inc.*, [230 Conn. 95, 98, 644 A.2d 325 (1994)], our sua sponte invocation of plain error review is warranted when the following requirements are satisfied: (1) we discuss the rule and articulate why it is appropriate; and (2) we give the parties an opportunity to brief the issue." *State* v. *Washington*, 39 Conn. App. 175, 179, 664 A.2d 1153 (1995).

"To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so

---

[9] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he demonstrates that it likely affected the result of the trial. . . . *State* v. *Caprilozzi*, 45 Conn. App. 455, 462, 696 A.2d 380, cert. denied, 243 Conn. 937, 702 A.2d 644 (1997)." (Internal quotation marks omitted.) *State* v. *Bradley*, 60 Conn. App. 534, 546, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000). Here, the defendant was convicted of conspiracy to commit robbery, although his codefendant in this joint trial was acquitted of the same charge. We conclude that the defendant's conviction constitutes a legal impossibility and that to permit his conviction to stand would not only be manifestly unjust but also would undermine the public's confidence in these judicial proceedings. Accordingly, we will review this claim under the plain error doctrine.

When one alleged conspirator is convicted of conspiracy and his alleged coconspirator is acquitted, the situation is similar to that where a jury has rendered an inconsistent verdict. Just as we will overturn a legally inconsistent verdict when "the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted"; *State* v. *Hinton*, 227 Conn. 301, 313, 630 A.2d 593 (1993); so, too, will we overturn a conspiracy conviction that is legally impossible because the acquittal of a codefendant negates the possibility of an agreement, which is an essential element of the conspiracy charge.

"To establish the crime of conspiracy under § 53a-48 . . . it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . Further, the prosecution must show both that the conspirators intended to agree and that they intended to commit the elements of the underlying offense." (Internal quotation marks omitted.) *State* v. *Green,* 62 Conn. App. 217, 223, 774 A.2d 157 (2001), quoting *State* v. *Booth,* 250 Conn. 611, 657–58, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut,* 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). Our Supreme Court "held in *State* v. *Grullon,* 212 Conn. 195, 199, 562 A.2d 481 (1989), that our conspiracy statute is bilateral in nature: 'Our examination of the definition of the crime of conspiracy in § 53a-48 convinces us that the legislature has determined that conspiracy requires a showing that two or more coconspirators intended to engage in or cause conduct that constitutes a crime.' " *State* v. *Robinson,* 213 Conn. 243, 250, 567 A.2d 1173 (1989).

In *Robinson,* our Supreme Court addressed the question: "When only two persons are alleged to have conspired to commit a crime and they are tried separately, does the acquittal on the charge of conspiracy of the first person tried bar the state from prosecuting the remaining conspirator for that same conspiracy?"[10] Id.,

[10] The factual scenario in *Robinson* resembles the situation in the present case. The defendant in *Robinson* was charged with and found guilty of murder and of conspiracy to commit murder. At the defendant's trial, the state alleged and presented evidence regarding one coconspirator. The sole alleged coconspirator, however, was acquitted of the conspiracy charge in a prior trial. Similarly, here, in this joint trial, the defendant and the only alleged coconspirator were tried jointly, yet the alleged coconspirator was acquitted and the defendant was found guilty of conspiracy.

251. In answering this question in the affirmative, our Supreme Court first concluded that a defendant cannot be convicted of conspiracy in the same proceeding in which all of the alleged coconspirators are acquitted. Id.

Our Supreme Court in *Robinson* stated that "[i]t has traditionally been held that a single conspirator may not be convicted in the same proceeding or prosecution in which all of the alleged coconspirators are acquitted. . . . 'The apparent basis for the traditional rule is the notion that the acquittal of all but one potential conspirator negates the possibility of an agreement between the sole remaining defendant and one of those acquitted of the conspiracy and thereby denies, by definition, the existence of any conspiracy at all.' " (Citation omitted.) Id. "The gravamen of the crime of conspiracy is the *unlawful combination* and an act done in pursuance thereof, not the accomplishment of the objective of the conspiracy. . . . Because the essence of conspiracy is the mental confederation of two or more persons, the crime is in every sense indivisible." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 252–53. Further, this court and our Supreme Court have on several occasions stated that the conviction of one defendant and the acquittal of the other in a joint trial of two alleged coconspirators constitutes a legal impossibility and cannot stand. See *State* v. *DeCaro*, 252 Conn. 229, 244 n.13, 425 A.2d 1022 (1997); *State* v. *Stevens*, 178 Conn. 649, 654, 425 A.2d 104 (1979); *State* v. *Milner*, 46 Conn. App. 118, 122 n.2, 699 A.2d 1022 (1997).

The state contends that the import of the *Robinson* case does not apply to this situation and that the defendant's conviction of conspiracy to commit robbery should stand because the acquittal of the alleged coconspirator Garcia does not negate the fact that another coconspirator existed and entered into a conspiracy to commit robbery with the defendant. In essence, the state argues that it was not required to prove the identity

of the coconspirator to sustain a finding of guilty of conspiracy, and, therefore, the acquittal of Garcia does not eradicate the fact that the defendant entered into a conspiracy with someone else. To support its proposition, the state distinguishes this situation from that in *Robinson* by claiming that in *Robinson*, unlike in the present case, it was assumed that all potential conspirators had been charged. We are not persuaded.[11]

The state prosecuted this case against both the defendant and the codefendant Garcia, jointly, as codefendants and coconspirators of the robbery of the grocery store on October 21, 1998. Here, the state charged only one person as a coconspirator, Garcia, and did not allege nor introduce evidence to establish that another person had engaged in a conspiracy to commit robbery with the defendant on October 21, 1998. During the trial, the state presented witnesses to prove that the defendant and Garcia had entered into a conspiracy to commit the robbery of the grocery store and then robbed the grocery store. Holland testified that in the early morning of October 21, 1998, she drove around in an automobile with the defendant and the codefendant Garcia, and that the defendant and Garcia purchased food from the grocery store. Further, Holland described that, when the defendant and Garcia returned to the automobile, they donned sweatshirts and ski masks and then reentered the grocery store. When the defendant and Garcia came back, they got into the automobile and quickly drove away. Acevedo, an owner of the grocery store that was robbed, testified that two men wearing ski masks, one short and one tall, had robbed the grocery store. Officer Garcia testified that he had pur-

[11] We note that "[c]onspirators need not all be charged in order to sustain a conviction of one of them for conspiracy." *State* v. *Shaw*, 24 Conn. App. 493, 494 n.1, 589 A.2d 880 (1991). As will be discussed, however, this statement of law does not apply to the present situation because the state presented evidence regarding only one coconspirator.

sued a vehicle that was wanted in connection with the robbery of the grocery store on October 21, 1998. When the automobile pulled over, the driver of the car, a tall man, escaped, and the two passengers, the codefendant Garcia and Holland, were apprehended.

During closing arguments, the prosecutor detailed the evidence allegedly proving that the defendant and the codefendant Garcia had conspired to and had robbed the grocery store on October 21, 1998. In describing the evidence regarding the conspiracy count, the prosecutor stated, "Now, intent for conspiracy. They [the defendant and the codefendant] have to intended to have committed the robbery. And they both put on the hoodies [hooded sweatshirts] and the mask, and they go in there, and one has a gun and one has a knife."

Here, for the defendant to have been legally convicted of conspiracy, the jury must have found that another person, namely, the codefendant Garcia, also was guilty of participating in the conspiracy. Garcia's "culpability was thus an essential element of the defendant's offense." *State* v. *Robinson*, supra, 213 Conn. 253. Because Garcia was acquitted, he may not be considered as a coconspirator. See *State* v. *Green*, supra, 62 Conn. App. 221. The state failed to present any evidence to prove that anyone other than Garcia had conspired with the defendant to commit the robbery. Therefore, the record lacks any evidence of separate acts or circumstances to support an agreement to conspire between the defendant and anyone else. See id., 224. Accordingly, the defendant's conviction of conspiracy to commit robbery must be set aside, as it constitutes a legal impossibility.

## II

The defendant next claims that the court improperly denied his motion for a mistrial because evidence of

his prior convictions had been admitted improperly.[12] We do not agree.

The following facts are necessary for the disposition of this claim. Before the jury trial began, the state and the defendant entered into a stipulation that provided that the defendant lacked a pistol permit and registration on both October 21, 1998, and October 23, 1998, the date that he was arrested. Furthermore, the parties stipulated that the defendant had prior convictions for carrying a pistol without a permit on February 18, 1997, and for possession of narcotics on March 22, 1995. Certified copies of the defendant's prior convictions were then introduced into evidence. When the trial court questioned the defendant's attorney as to whether he had any objection to the stipulations, the defendant's attorney responded, "No, Your Honor. In fact, since we've discussed them, my understanding is that the certified copies will come in today, as well."

During the trial, the state offered into evidence the certified copies of the defendant's prior convictions and the defendant's stipulation that he did not have a permit to carry a pistol. In response, the defendant's attorney objected and requested a mistrial on the grounds that the introduction of certified copies of the defendant's criminal record would unfairly prejudice the jury against him and because the defendant had not testified in the case. The trial court denied the defendant's motion for a mistrial, and the stipulations were presented before the jury. The trial court then informed the jury that it was to consider the stipulations "only with regard to that second information [the charge of

[12] Practice Book § 42-43 provides in relevant part: "Upon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case. . . ."

criminal possession of a pistol or revolver in violation of § 53a-217c] . . . ."

"In our review of the denial of a motion for a mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *McIntyre*, 250 Conn. 526, 533, 737 A.2d 392 (1999), quoting *State* v. *Newsome*, 238 Conn. 588, 628–29, 682 A.2d 972 (1996). The trial court possesses great discretion in determining whether to grant a motion for a mistrial. *State* v. *Taft*, 57 Conn. App. 19, 22, 746 A.2d 813, cert. granted on other grounds, 253 Conn. 909, 753 A.2d 942 (2000). On appeal, "we hesitate to disturb a decision not to declare a mistrial. . . . [W]e afford every reasonable presumption . . . in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 51 Conn. App. 171, 176–77, 721 A.2d 146 (1998).

Pursuant to § 53a-217c, a prior conviction of a felony is an element of the crime of criminal possession of a pistol or revolver. Without presenting proof of a prior conviction here,[13] a violation of § 53a-217c could not be established. See id., 180. "[A]lleging possession of a firearm [in this case a pistol or revolver] without reciting the prior criminal conviction would not set forth a cognizable criminal offense." *State* v. *Joyce*, 45 Conn. App. 390, 405, 696 A.2d 993 (1997), appeal dismissed, 248 Conn. 669, 728 A.2d 1096 (1999).

This court has addressed on numerous occasions the issue of whether the introduction at trial of a prior

[13] As can be found in the statute, proof of a prior felony conviction is not the only basis to establish a violation of § 53a-217c. In this case, however, the defendant's prior felony convictions form the basis for his being charged with violating § 53a-217c.

criminal conviction to establish a violation of § 53a-217c results in substantial prejudice to a defendant or deprives a defendant of a fair trial. See *State* v. *Taylor*, 52 Conn. App. 790, 793–96, 729 A.2d 226 (1999); *State* v. *Davis*, supra, 51 Conn. App. 180–84; *State* v. *Joyce*, supra, 45 Conn. App. 403–405; *State* v. *Banta*, 15 Conn. App. 161, 166–72, 544 A.2d 1226, cert. denied, 209 Conn. 815, 550 A.2d 1086 (1988). In *Joyce*,[14] we concluded that the defendant was not prejudiced or deprived of a fair trial because the jury was informed of his prior conviction through a stipulation and because the trial court advised the jury that it was to consider the prior conviction solely for purposes of establishing an element of the crime charged. *State* v. *Joyce*, supra, 405.

When analyzing whether a defendant was prejudiced by the introduction of evidence of prior convictions for purposes of establishing the elements of a violation of § 53a-217, this court utilizes five factors as set forth in *Banta*: "(1) the manner in which the evidence entered the case and the extent of the jury's knowledge of the facts underlying the prior felony conviction, (2) the adequacy of any cautionary instructions given by the court, (3) the use of the prior felony evidence by the prosecution in argument to the jury, (4) the likelihood that the prior felony conviction evidence will inflame the passions of the jurors in light of the nature of the

---

[14] The defendant in *Joyce* actually was charged with criminal possession of a firearm or electronic defense weapon in violation of General Statutes (Rev. to 1997) § 53a-217 (a). The language and elements of § 53a-217 are very similar to those of § 53a-217c. Pursuant to General Statutes (Rev. to 1997) § 53a-217 (a), "[a] person is guilty of criminal possession of a firearm or electronic defense weapon when he possesses a firearm or electronic defense weapon and has been convicted of a capital felony, a class A felony, except a conviction under section 53a-196a, a class B felony, except a conviction under section 53a-86, 53a-112 or 53a-196b, a class C felony, except a conviction under section 53a-87, 53a-152 or 53a-153, or a class D felony under sections 53a-60 to 53a-60c . . . . For purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

offenses charged and (5) the strength of the evidence against the defendant. See [*State* v. *Banta*, supra, 15 Conn. App. 170–71]." *State* v. *Davis*, supra, 51 Conn. App. 181–82.[15]

The record and transcripts in this case lead us to conclude that the introduction of evidence of the defendant's prior convictions did not prejudice the defendant, nor did it deprive him of a fair trial. Here, the jury learned of the defendant's prior felony convictions by way of a stipulation and was presented with a copy of the defendant's convictions for possession of narcotics and possession of a pistol. The jury did not receive any other information regarding the defendant's prior convictions. The trial court informed the jury that it was to consider the defendant's prior convictions only with regard to the charge of a violation of § 53a-217c. Further, during closing arguments the prosecutor referred only once to the prior convictions. The prosecutor stated that the stipulations of the prior convictions did not "say anything to [the defendant's] character; that's not the point of it. The point of that is that those are underlying elements in the crime of criminal possession of a firearm." Additionally, given the cursory mention of the defendant's prior convictions, it is unlikely that the jurors' passions were inflamed to such a degree as to unduly prejudice the defendant.

Finally, the evidence that the state presented against the defendant was neither sparse nor unconvincing.

---

[15] This court generally has employed the test as set forth in *Banta* in the context of a defendant's appeal from the trial court's denial of a motion to sever or bifurcate a trial. See *State* v. *Taylor*, supra, 52 Conn. App. 794; *State* v. *Davis*, supra, 51 Conn. App. 181–82; *State* v. *Carpenter*, 19 Conn. App. 48, 62–63, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989). Although this case involves a denial of a motion for a mistrial, an appeal from a denial of a motion for a mistrial and an appeal from a denial of a motion to sever both involve a similar evaluation of whether prejudice to the defendant occurred. Accordingly, we will apply the principles and rationale from *Banta* to the present situation.

Acevedo testified that the defendant purchased goods from him prior to the robbery and that the robber resembled the defendant. Holland identified the defendant as one of the men who had robbed the grocery store. Further, the pistol that the defendant disposed of on October 23, 1998, was the same pistol as the one used in the robbery on October 21, 1998, and a bullet from the pistol was also found in the defendant's jacket pocket. Given the substantial evidence presented against the defendant, it is extremely unlikely that the stipulation of the defendant's prior felony conviction prejudiced the jury so as to affect the outcome of the case.

On the basis of the foregoing, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.

## III

The defendant next contends that the court improperly denied his motion for a judgment of acquittal because the state failed to present sufficient evidence to support his conviction of robbery in the first degree and conspiracy to commit robbery in the first degree.[16] We disagree.

"In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994), quoting *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993).

---

[16] Our holding in part I of this opinion disposes of the defendant's claim regarding the lack of evidence supporting his conviction of conspiracy to commit robbery.

"The evidence must be construed in a light most favorable to sustaining the jury's verdict. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Citations omitted; internal quotation marks omitted.) *State* v. *Ingram*, 43 Conn. App. 801, 809, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997), quoting *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994). "[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

To convict a defendant of the crime of robbery in the first degree, the state must prove beyond a reasonable doubt that "in the course of the commission of the crime of robbery as defined in section 53a-133[17] or of immediate flight therefrom, [the defendant] or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he repre-

---

[17] General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

sents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." General Statutes § 53a-134 (a). "The state [has] the burden of proving beyond a reasonable doubt the defendant's identity as the robber . . . and the issue of the identity of the defendant as the robber was one of fact for the jury." (Citation omitted.) *State* v. *Ingram*, supra, 43 Conn. App. 810–11.

In the present case, ample evidence exists supporting the jury's verdict of guilty on the charge of robbery in the first degree. Various witnesses provided testimony linking the defendant to the robbery at the grocery store on October 21, 1998. The victim, Acevedo, testified that the defendant, who wore black clothing, purchased food from him early in the morning of October 21, 1998, and that the robber who had entered a few minutes later was of a similar height and also was dressed in all black, with the addition of a black mask. Holland testified that she drove around in a grey station wagon with tinted windows with the defendant and the codefendant Garcia throughout the early hours of October 21, 1998, before, during and after the robbery. She described how after purchasing food from the victim's store, the defendant returned to the motor vehicle, dressed himself in a dark hooded sweatshirt and ski mask, and reentered the victim's grocery store. A few minutes later the defendant came back out and drove away from the scene. She noticed a pistol resting on the seat beside the defendant. Further, Marshall Robinson, a firearm and tool mark expert examiner, testified that the spent bullet shell discovered on the floor of the victim's grocery store and the live bullet found in the defendant's jacket pocket were both at one time chambered in the pistol that the defendant possessed on October 23, 1998. Viewing the evidence in a light most favorable to upholding the jury's verdict, we con-

clude that the evidence was sufficient to support the verdict of guilty of robbery in the first degree.

In challenging the verdict of guilty of the robbery charges, the defendant argues that the jury improperly relied on the testimony of Holland because it was untrustworthy. The defendant further contends that the jury improperly relied on the testimony of other state witnesses due to their lack of personal knowledge of the robbery incident.

"It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) *State v. Marsala*, 44 Conn. App. 84, 96, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997), quoting *State v. Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376 (1996). It is the right and duty of the jury to determine whether to accept or to reject the testimony of a witness, and what weight, if any, to lend to the testimony of a witness and the evidence presented at trial. *Nolan v. Nationwide Mutual Ins. Co.*, 60 Conn. App. 68, 73, 758 A.2d 432, cert. denied, 255 Conn. 920, 763 A.2d 1042 (2000). Accordingly, the jury was entitled to credit the testimony of the state's witnesses.

On the basis of the foregoing, we conclude that sufficient evidence exists supporting the jury's verdict of guilty on the charge of robbery in the first degree.

IV

The defendant next contends that he received ineffective assistance of trial counsel when his counsel (1) entered a plea of guilty to "the gun charges" without his consent, (2) failed to object at trial and to move for an acquittal on the charge of criminal possession of a firearm, (3) failed to raise the issue before the trial court that the conviction of robbery in the first degree

and criminal possession of a pistol violated his constitutional right against double jeopardy[18] and (4) failed to object to prosecutorial misconduct and errors that occurred during the trial. Because the defendant has improperly raised issues of ineffective assistance of trial counsel before this court, we decline to address these claims.

"We have long held that the proper forum in which to address claims of ineffective representation of counsel is in the habeas forum or in a petition for a new trial, rather than on direct appeal." (Internal quotation marks omitted.) *State* v. *Laracuente*, 57 Conn. App. 91, 97, 749 A.2d 34, cert. denied, 253 Conn. 923, 754 A.2d 798 (2000), quoting *State* v. *Jones*, 46 Conn. App. 640, 660, 700 A.2d 710, cert. denied, 243 Conn. 941, 704 A.2d 797 (1997). "As our Supreme Court has stated, an ineffective assistance claim should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify." (Internal quotation marks omitted.) *State* v. *Laracuente*, supra, 97. Therefore, we conclude that the defendant improperly brought this claim in his direct

---

[18] The defendant also requests that this court review his double jeopardy claim separately from the ineffective assistance of counsel claim. The defendant concedes that he failed to raise the issue of double jeopardy before the trial court. In seeking our review of this claim, however, the defendant fails to request review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. "It is well established that generally this court will not review claims that were not properly preserved in the trial court. . . . A defendant may prevail on a claim of constitutional error not preserved at trial, however, if the defendant satisfies the four part standard set forth in *State* v. *Golding* [supra, 239–40]." (Internal quotation marks omitted.) *State* v. *Barnett*, 53 Conn. App. 581, 598, 734 A.2d 991, cert. denied, 250 Conn. 918, 738 A.2d 659 (1999). Where a defendant fails to seek review of an unpreserved claim under either *Golding* or the plain error doctrine, this court will not examine such a claim. *State* v. *Marsala*, 59 Conn. App. 135, 143, 755 A.2d 965, cert. denied, 254 Conn. 948, 762 A.2d 905 (2000); *State* v. *Barnett*, supra, 598. Accordingly, we decline to review the defendant's double jeopardy claim.

appeal and that this issue should be raised in a petition for a writ of habeas corpus. *State* v. *Johnson*, 57 Conn. App. 156, 158 n.4, 748 A.2d 334, cert. denied, 253 Conn. 912, 754 A.2d 162 (2000).

V

The defendant also claims that certain instructions to the jury regarding the jury's duty[19] violated his constitutional rights because the instructions were unfairly balanced in favor of conviction. The defendant additionally contends that the court's charge to the jury diminished the presumption of innocence standard and thereby deprived him of a fair trial.[20] We disagree.

When analyzing a claim of improper jury instructions, the standard of review to be applied is whether it is reasonably possible that the jury was misled by the challenged instructions. *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995). "In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in

[19] The defendant challenges the following language contained in the trial court's instructions to the jury: "These men [the defendants] rely upon you to consider carefully their claims and to evaluate carefully all of the evidence and to render a verdict of not guilty, if the facts and the law require such a verdict. The state of Connecticut and its people . . . look to you as sworn officers of the court to deal with the case fairly, firmly and honestly as strong-minded men and women with the interest placed in your hands as an arm of the court to weigh and uphold the law of the land by rendering a verdict of guilty, if the facts and the law require such a verdict." The defendant objected to the phrase "fairly, firmly," and presently contends that those words improperly placed emphasis on the jury's duty to convict in violation of his due process rights.

[20] The defendant challenges the following language: "The presumption of innocence does not have the effect of evidence itself. It's only effect is to place upon the state the burden of proving the defendant guilty beyond a reasonable doubt."

the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) Id.

## A

We first address the defendant's claim that the trial court improperly emphasized the jury's duty to convict. In *State* v. *Walton*, 227 Conn. 32, 62, 630 A.2d 990 (1993), our Supreme Court addressed a challenge to almost identical language contained in a jury instruction. In concluding that the instruction did not deprive the defendant of his due process rights, our Supreme Court stated: "[I]t would be preferable for a trial court either to omit those references entirely or frame the instructions so that the laudatory references are included with respect to both jury functions—acquittal as well as conviction. . . . That does not mean, however, that the defendants are correct in their characterization of the message the language in issue may have conveyed to the jury . . . ." Id., 63–64. Further, this court in several cases has upheld jury instructions containing substantially similar language, finding that such language "did not lessen the state's burden to prove the defendant guilty beyond a reasonable doubt and did not undermine the presumption of innocence." *State* v. *Lopez*, 37 Conn. App. 509, 515, 657 A.2d 647, cert. denied, 234 Conn. 902, 660 A.2d 858 (1995); see *State* v. *Bush*, 33 Conn. App. 253, 265–66, 635 A.2d 820 (1993), cert. denied, 228 Conn. 923, 638 A.2d 37 (1994); *State* v. *McFadden*, 25 Conn. App. 171, 176–77, 593 A.2d 979, cert. denied, 220 Conn. 906, 593 A.2d 972 (1991).

After reading the challenged jury instruction in light of the charge in its entirety, we conclude that the charge

did not mislead the jury regarding its duty, and thus the defendant cannot prevail. The portion of the instructions challenged by the defendant is a small part of a larger section of the jury charge that concerns the jury's duty to view the evidence carefully and objectively, and to render a verdict based on its consideration of the evidence and the law. Immediately prior to the challenged instruction, the court instructed the jury that it was to "render a verdict of not guilty, if the facts and the law require such a verdict." Shortly afterward, the court stated that "[t]he state is as much concerned as having an innocent person acquitted as having a guilty person punished. . . . It is the sworn duty of the courts and the jurors to safeguard the rights of persons charged with a crime by respecting the presumption of innocence which the law imputes to every person charged with a crime." Viewing the charge as a whole, we conclude that there is no reasonable possibility that the jury was misled. Therefore, the defendant's claim must fail.

B

As for the defendant's claim that the trial court diluted the presumption of innocence standard in the jury instructions, we conclude that the defendant has not preserved this claim for our review.

It is well established that this court is not required to review claims that were not properly preserved in the trial court. Practice Book § 60-5. "This court is not bound to review claims of error in jury instructions if the party raising the claim neither submitted a written request to charge nor excepted to the charge given by the trial court." *State* v. *Jones*, 39 Conn. App. 563, 566–67, 665 A.2d 910, cert. denied, 235 Conn. 931, 667 A.2d 800 (1995); see Practice Book § 42-16.[21] Further, the

---

[21] Practice Book § 42-16 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is

defendant fails to seek review of this claim under either plain error review or *State* v. *Golding*, supra, 213 Conn. 239–40. Because the defendant failed to take exception to the charge or to submit a written request regarding this charge, this issue is unpreserved and we will not review it.[22]

## VI

The defendant's final claim is that the prosecutor's comments during closing arguments improperly shifted the burden of proof onto the defendant.[23] We decline to review this claim because it is unpreserved.

The defendant concedes that he failed to object to the prosecutor's comments during closing arguments, yet argues that appellate review of this claim is warranted under due process principles. Because this claim is unpreserved, our review is limited to either plain error review; see Practice Book § 60-5; or review pursuant to the *Golding* doctrine. *State* v. *Golding*, supra, 213 Conn. 239–240; see *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 17, 761 A.2d 740 (2000). Here, the defendant failed to seek review under either the plain error doctrine or *Golding*. "In the absence of such a request, we

delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

[22] Notwithstanding the fact that this issue is unpreserved, this court on numerous occasions has approved similar language regarding the presumption of innocence and has found that such language did not mislead the jury or diminish the presumption of innocence standard. See *State* v. *Lee*, 53 Conn. App. 690, 700–701, 734 A.2d 136 (1999); *State* v. *Crosby*, 36 Conn. App. 805, 814–15, 654 A.2d 371, cert. denied, 232 Conn. 921, 656 A.2d 669 (1995).

[23] The defendant contends that the following statements by the prosecutor during summation were improper: "With that said, this case is a very simple case. There was a robbery over at 741 East Main Street at Zaidas Market. . . . There is no evidence that a robbery did not take place"; and "[l]et's go back to the 21st day of October when the robbery occurred. As I said earlier, there's no dispute that a robbery took place. There's been no evidence to show a robbery did not take place."

have, in the past, declined to review a defendant's claim under similar circumstances." (Internal quotation marks omitted.) *State* v. *Valinski*, 61 Conn. App. 576, 585, 767 A.2d 746 (2001). Further, we note that "[t]he defendant cannot, by identifying isolated remarks [by the prosecutor in closing argument], set forth a claim of constitutional magnitude." (Internal quotation marks omitted.) *State* v. *Cox*, 50 Conn. App. 175, 180, 718 A.2d 60 (1998), aff'd, 251 Conn. 54, 738 A.2d 652 (1999). Accordingly, we decline to review this claim.

The judgment in the second case is reversed only as to the conviction of conspiracy to commit robbery in the first degree and the case is remanded with direction to render judgment of not guilty of that crime and to vacate the sentence for the conspiracy conviction. In all other respects the judgments are affirmed.

In this opinion the other judges concurred.